All right. Thank you. Good morning, Your Honors. May it please the Court. James Suddoth on behalf of Mr. David Stanley. Your Honors, this case, I think, is a unique opportunity in that it addresses an area that is simply so unsettled currently within the law. However, to that end, the way I intend to structure my argument is to first address the issue of the civil service accrual that occurred in this case, because I think that this appeal can be disposed of by dealing with that issue, and then after dealing with the civil service appeal, I'll turn to the issues of interruption and the issues within claim and the issues that were so thoroughly briefed. And so, turning first to my first point, as Your Honors are well aware from this case, my client received disciplinary notice on August the 11th, 2020. Shortly thereafter, August 19th of 2020, he timely filed his appeal. There is no dispute that he timely filed a civil service appeal in this case. Second to that, he did, and it's important to provide this factual context because the procedural history in this case, I'll admit, is somewhat beleaguered, but there pending with this civil service case was also state court petitions. So the very next day, August 20th, 2020, Mr. Stanley filed a petition for temporary restraining order along with this request for an injunction. That was actually granted on the TRO basis at the district court level, and then subsequently thereafter on August, excuse me, in November of 2020, again, a suit was filed in state court which pent for the longest time compared to the first suit which was only pending for about three months. The second suit in November 20th of 2020 was pending through 2021. That suit was a petition for preliminary injunction. So you have these state court suits that are pending asserting the exact same kinds of allegations and factual claims. Do either of those suits in the operative pleadings make a claim for a constitutional violation in the nature of Section 1983? Well, Your Honor, I think that goes directly to the point of why we're here. My short answer is yes, I do, and here's the reason why. They seek money damages, 1983 money damages? Yes, Your Honor, the prayer of both suits, both the August suit and the November suit, and the prayer of both cases, which I can get you the record on appeal citation for that. There is a request, yes, for injunctive relief, but there is also a request for not only attorney's fees which are provided under 1983, which would be a monetary damage, but also monetary damages for the fact that the suspension here was a three-fold suspension, excuse me, the discipline was a three-fold discipline. In one case, it had an 80-hour unpaid suspension, meaning that was going to be 14 workdays of lost wages. There was a claim for the restoration of those lost wages, i.e., a monetary demand. In addition to the monetary demand or the monetary loss, there was a demotion in rank and there was a transfer from the elite K-9 division down to routine patrol for my client, so the discipline was three-pronged. But the record on appeal citation, which I said I would get you, Judge Inglehart, is in August 20th, that's record on appeal 657, November 20th, record on appeal 741. That's where the prayers expressly contemplate monetary damages. To the point, though, about the claim for constitutional violations, because in Louisiana we are operating under fact-based pleading and not notice-based pleading, and this is what the Kling Court, the district court Judge DeGravels grappled with in the district court case with Kling, was he looked at the specific language, because it is fact pleading, to look at the specific language within Kling's petition to see, did he reference words such as United States Constitution or the First Amendment or 1983, claims that would, excuse me, words and phrase facts that would reasonably lead to the derivation of a claim, a constitutional claim. So, if that becomes the standard or if that is the standard, then very easily we have pled both federal claims and state claims, because it's very important to note in this case that the legal elements required for Mr. Stanley to prove his state First Amendment retaliation claim versus a federal First Amendment retaliation claim or, excuse me, a Louisiana constitutional claim versus a federal constitutional claim, those legal elements are identical. And so, within Stanley's petition, contrasting to Kling, within Stanley's petition there are express and direct references to the United States Constitution, to the First Amendment, to the fact that there are federal constitutional violations occurring. In addition to, there are allegations of state constitutional violations. And so, in our state court suit, there were claims made both factually, but also, now we didn't expressly term it as a cause of action as I would if I was filing it in federal court. And we have notice pleading, and so I'd be obligated to post that as a specific cause of action. If he had received his job back in connection with the state court lawsuit, he received his job back, back pay as you suggest, would he still have a Section 1983 claim? You know, I think the answer to that would be no. In addition to if civil service had done that, the entire point of the civil service process and why we are encouraged, there's a public policy encouraging that process is to try to deal with the issue before clogging the court system. So . . . Is there a case you can cite us to that suggests or supports the principle that the defendant can undo or wipe away a constitutional violation by rehiring and paying back pay? It seems like, it seems like he's, he's, let's assume he was demoted or suspended or disciplinary action was taken because he exercised his First Amendment privilege or First Amendment right as he did, as you allege in this case, and he did not pursue any relief through civil service or through any of the administrative process, his 1983 claim would be ripe then. Is that, can we agree on that or . . . Absolutely, yes. Absolutely. Okay. So he embarks upon the procedures that are available, administrative procedures, and that's where obviously this case gets into the weeds. Right. But if the defendant, the employer in this case complies with the demand, whether it's through the administrative process or through a judgment in state court, I think you just stated that he would not have a 1983 claim. What would be the best authority for us to look at that would support that? So I apologize, I think I misunderstood your previous question, Judge Inglehart, because this is actually a point that I made to the district court that there is no de minimis constitutional violation and so even if they would have restored his wages, there still is a constitutional violation, whether that is the emotional pain and suffering he goes through, whether it's simply having to retain an attorney and pay an attorney in front of vindicate his rights to get his job back and he's incurred attorney's fees. There is no case that I can cite you to for the proposition that the 1983 case would wash I don't properly understand your question, I don't actually contend that. So you're not really challenging the date of accrual, right? Well, with a caveat, Your Honor, I don't challenge the notion that when the defendants proffer a lot of these cases as to the accrual date starts when he got notice, I'm not going to fight or quibble about the fact that accrual may start when he gets notice, but I am going to push back on the notion that that accrual was not delayed. So that accrual date may have started or that accrual date may have arisen or triggered whenever he received notice, but I do disagree with the idea that the accrual date is the date of notice in this case. What's your best case for that? My best case, Your Honor, would be the Harrison case, which we cite to in my brief and then Harrison includes within it a string cite to quite a few other cases both within this circuit as well as around the country that look at the interplay of civil service upon the accrual and just to tell you a few of them . . . I thought the whole point of the Patsey case, you know, this is building on what Judge Englehard said, the whole point of the Patsey case in the Supreme Court is you do not have to exhaust state remedies in order to file a constitutional suit. Now, the fact that state remedies may take care of part of the damage doesn't mean necessarily that there's not also a constitutional claim and it starts accruing when you're, when you receive notice. Well, the problem with the line of cases the defense cites to such as Rick's, which deals with from the U.S. Supreme Court or Shadron from the U.S. Supreme Court, the problem with those cases is that from the moment of notice of the accrual of discipline until the point of termination, from that notice to termination, it is an inevitable conclusion. There may be a grievance procedure, but the grievance procedure, and this is the Supreme Court actually stating this, the grievance procedure is designed as a remedy, as a remedy after the fact of the discipline, not designed to prevent the discipline. What's Mark . . . Accrual is a question of federal law, right? The limitations period itself is state law, but the accrual of the cause of action is federal law. Well, of course, I agree that, yes, you're looking at state law because 1983 is looking at state law, therefore looking at 3462. However, on the accrual issue, respectfully, I think that the accrual issue in this case, unlike the case that you were discussing, Your Honor, does delay for the following reason. There is within civil service, within this statutory regime, and Keeney, by the way, is a good case of this beyond just Harrison. Within this statutory regime, civil service has exclusive jurisdiction over this, and they can completely reverse the appointing authority, and within the statute, the appointing authority . . . Any civil service group can do that, but could they . . . could he also have been suspended pending the civil service, or does the suspension not take place until after the civil service thing has run its course? Whenever a timely filed civil service appeal, my understanding, at least, Your Honor, is when a timely civil service appeal has been filed, at least typically in practice, what happens is the discipline is stayed pending what the civil service board does. Why did this fellow take a year worth of disability leave? Well, in this case, because of the retaliatory effects of both how the job became more hostile and both the environment in which he was working in, he began to take sick leave to get away from the job environment and the stresses that was putting him under. So the sick leave in this case, the City of Lafayette did delay imposing any of the suspension or any of the effects of it for quite some time, Your Honor's right, for north of a year. Well, I mean, he wasted a year. That's all I'm suggesting is he wasted a year of sick leave if the filing of the civil service suit would have automatically suspended the suspension. Well, but so to push back on that though, yes, I think as a matter of practice what they typically do is they delay. However, I don't believe that they have to delay. What civil service can do is they can alter, they can amend, they can remove, they can completely change, but I don't believe, and I could be wrong about this, I don't believe there's any provision mandating that the appointing authorities stop and wait for civil service to make their decision. But as a matter of practice, when there is a timely filed civil service appeal, they typically will wait until that appeal runs its course to make their decision or to impose it. But in this case, you're also relying on the two separate petitions that you referenced at the outset, let alone the civil service or the administrative process, you're relying on the two separate petitions, which it would seem to me the argument is that the plaintiff can unilaterally suspend the running of the prescription on the claim simply by filing his own lawsuit, and is there any support for that? No, Your Honor, and that's not the contention that we're making here. This was not designed to unilaterally delay this. What Mr. Stanley did, what Corporal Stanley did in this case, was try to vindicate his rights in every form he possibly could. He went through civil service, but he also tried to file a state court suit to stop the suspension from happening. When that state court suit was initially granted, the TRO was granted, that was successful, but then it required the filing of an additional suit. That second suit, November of 2020, the defense themselves went into district court and argued that we were premature, moved to dismiss our state court suit. We were moving, not waiting or intentionally delaying, we were moving as early as August of 2020 and then again in November of 2020 to try to vindicate this and address this. We were dismissed as premature in the district court because they alleged that civil service had to play its course, it had to run its course, and now after we run civil service and do the civil service process, they actually allege remarkably that civil service is in opposite and that it doesn't apply in this case. So does Kling 2 apply in terms of your claim? I think that the analysis in Kling, in the event that this court does not agree, the accrual date is delayed or the accrual date is not the accrual date of the defense. So there are two things, two requirements as I understand it. It must apprise the defendant of the nature of the claim and what is demanded. Assuming the state court petitions mention, as you said, the guarantees of freedom of speech and apprise the defendant of the nature of the claim, does it also satisfy what is demanded? It does, Your Honor, for this reason. Upon a close reading of Kling and with all due respect to the Supreme Court, Kling is not exactly the easiest guidepost to anyone, but upon my reading of Kling, this is what I would suggest to the court, that what Kling is doing in their certified question and answer is they are looking at it through the prism of what is the notice that we're giving. Does the defendant have notice of the claim? They never change any of their prior precedent where demand, demand is defined by 421 and demand is a civil action seeking a legal enforcement of a right. The contention by the defendants that demand is somehow equated now to a remedy or demand is equated to relief as opposed to demand being the civil action for the enforcement of a right, that is the conflation that I take issue with. Kling never conflates the word demand. Demand is always viewed as the filing of the pleading. I see I'm out of time. I'd like to keep addressing your question, but maybe I can do it on rebuttal. Thank you, Your Honor. All right. Thank you, sir. Mr. Adly. Good morning, Your Honors. Michael Adly on behalf of the defendant and the appellees. So, Your Honors, this claim is prescribed on the face of the complaint. Plaintiff was notified of his discipline at the latest on June 11th, 2021. As you heard, it was earlier, but the magistrate went with the latest date, which was June 11th, 2021. He did not file his suit in federal court until June 14th of 2022, over a year later. In 1983 action, you look to the state court for the prescriptive period of the statute of limitations. Louisiana, it's one year. But, as the judge has pointed out, when the claim accrues, when prescription accrues as a federal, it goes by federal law. And what federal law says, comes from the United States Supreme Court, is your claim accrues when you are notified of the discriminatory act. Not when the discriminatory act ends, not when the consequences of it become the most painful, but when you are notified of the discriminatory act. And again, that would be at the latest on June 11th, 2021. His suit wasn't filed until over a year later. What was the accrual argument made, or was it made, before the magistrate? That's a great point, your honor, and I was about to get to it. So as you heard, he raises two arguments. One is that, and I was a little bit confused with what he was saying, either the civil service board told prescription, or prescription did not accrue until the civil service board rendered its decision. That was not presented to the magistrate judge. That argument came later in the objection, and then was fleshed out more before this court. And so, with that argument that he presents, there's two issues. One of them is I contend he's waived that argument. If you don't present your argument to the magistrate judge, it is waived or forfeited unless you can come up with compelling reasons for why you didn't present it. In considering the report and recommendation, did the district judge confront the issue at all, or did the district court consider it waived as well? The district court didn't mention whether it was waived or not waived. It just did not address it. The only . . . I'll put one caveat on that. When the plaintiff initially opposed our motion to dismiss, he said the accrual date was either when he began serving his discipline or when the discipline terminated. In his objection, he said it's actually February 2022, which is when the civil service board would have rendered its decision. The district court judged the only reference he said plaintiff contends prescription accrued on February 2022. So that's his only reference to this new civil service board argument, but there was no meaningful engagement with it. So, I would contend it's waived. But that's not the only problem with that argument. The larger problem is it's already been rejected by the United States Supreme Court. And with that, I would refer the court to Delaware State versus Ricks. Ricks is a librarian at Delaware State. He's denied tenure, so he files a grievance. He exhausts that grievance procedure, and then he files a lawsuit. I believe it's Title VII, 1981. The Supreme Court says his claim is untimely, and they say, prescription accrued when he was notified of the denial of tenure. They say the pendency of a grievance procedure or some other matter of collateral review does not toll the statute of limitations. In fact, the court of appeal in that case went with the argument that the grievance is pending here. The United States Supreme Court reversed it and said, no, it does not toll the statute of limitations. They continued with, prescription commences or statute of limitation accrues when you are notified of the discriminatory act. Plaintiff does not identify a single case providing otherwise. What he did, he cited to a lot of case law, none of it controlling on this court, but a lot of case law throughout the country, but he doesn't make the distinction in those cases. It's not 1983 actions over First Amendment like this discipline. In those cases, it was all procedural due process arguments, where the plaintiff said the process, the hearing they got before the Civil Service Board was not adequate. Because of that, they are filing suit for procedural due process. Well, of course, in that instance, it makes sense that prescription would not accrue until the Civil Service Board renders its decision. As far as the Harrison case, that one was procedural due process as well as equal protection in First Amendment, but it was dismissed on the merits of the claim. So their opining on prescription in that case or statute of limitations in that case is purely dicta. It has no bearing on this court. Then, in his reply memorandum, and I believe he alluded to it just now, he makes this argument that the Civil Service Board has exclusive jurisdiction over these claims, such that if you follow down that path, it would lead you to believe that if you don't file before the Civil Service Board and exhaust your remedies, you could waive your constitutional rights. There's absolutely no case law supporting that, but in reading his cases that he cited on that new point, I came across a case that was cited in those cases called McCain v. Lafayette. That comes out of the Third Circuit, it's 741 Southern 2nd, 720, and it actually addressed pretty specifically the issue we've got dealing with here. And this is a quote from that case, it says, we find no jurisprudential or legislative authority indicating such a plaintiff's cause of action does not exist until the Civil Service Board renders its decision or that prescription is suspended until such time. Well, that answers the question for the court, and that comes from the circuit we're in at Lafayette. So then I'll move on to his next argument. Recall, he's got two arguments for why his, it's not prescribed. His second argument is that he filed these state court suits. Now, he refers to them as two different suits, it's one suit. They both have the same docket number, the same judge. I don't know why it was done this way. He said the initial pleading was a petition for temporary restraining order and preliminary injunction. He then filed another petition to set the preliminary injunction for hearing. But what those suits did is they came for hearing before the judge, and they were dismissed as premature on April 26, 2021. Well, a premature suit does not interrupt prescription in Louisiana. So even if what he's saying is true, this suit wouldn't do it. This suit would not interrupt prescription because it was dismissed as premature. Now, let's put that aside and say maybe it could interrupt prescription. Premature because of the administrative procedure? Correct, Your Honor. Let's say it's not dismissed as premature, but it is dismissed on April 6. I'm sorry. Let's say it still interrupts prescription. For some reason, we find it still interrupts prescription. It was dismissed on April 26 of 2021. Prescription commenced running anew on the date it was dismissed. He still didn't file a lawsuit until a year after that date. So he fails on that ground as well. Now, we put that aside if we want to go further into his argument. And he says, well, Louisiana is a fact pleading state, and you're entitled to any relief available under the facts. You don't have to plead your specific relief. And as a general precept, I agree with that. Louisiana is a fact pleading state. But what we have here is at the hearing on this matter, the plaintiff said, this is not a case for monetary relief. He said that at the hearing, it was purely injunctive relief. Injunctive relief plus reinstatement of his sick leave with the back pay that would come with that and attorney's fees. But it was purely injunctive relief. So sure, you are entitled to any relief available under the facts, unless you affirmatively disclaim you are seeking that relief. And now I'll go even further, and I'll address Kling versus Hebert, the last part of his argument. This court certified the question to the Louisiana Supreme Court dealing with under what circumstances a state court suit would interrupt prescription as to a subsequently filed federal court suit. Louisiana Supreme Court said, prescription is interrupted when notice is sufficient to fully apprise the defendant of the nature of the claim of the plaintiff and what is demanded of the defendant. And for today, the very important part of that sentence is the second part, what is demanded of the defendant. So the demand has to be the same. The objects of the two suits have to be the same. And what the court did to cite as an example for that is cited Thompson versus Town of Jonesboro. In that case, the plaintiff was appointed as the interim mayor. But in 2013, the Secretary of State refused to issue the commission. So the plaintiff had to file a mandamus suit to get the Secretary of State to issue the commission. And on October 2nd of 2014, the Secretary of State issued that commission. Now, within one year of that mandamus suit, but well over one year from the initial denial, the plaintiff filed a tort suit against the Secretary of State. Excuse me, Your Honor. The plaintiff filed a tort suit against the Secretary of State for the untimely issuance of the commission. Now, it's untimely on its face, so they have to look at whether the mandamus suit interrupted prescription. And the court says, no, it does not, because the objects of the two suits are different. Sure, you have notice of the nature of the claim. It's a dispute over the issuance of the commission. But the objects, or what is demanded, are different. In one case, you've got mandamus relief. And in the other case, you've got monetary damages. And because the defendant has not put on notice of what is demanded of him the same way in both suits, prescription was not interrupted. That case is cited by the Louisiana Supreme Court in Kling versus Hebert as an example of what it means when it says, you have to be on notice of what is demanded of the defendant in order to interrupt prescription. But again, I contend that's purely an academic discussion. The court doesn't even need to get into that, because his suit was dismissed as premature. It doesn't interrupt prescription on that grounds. And it was dismissed over a year before he filed his federal court lawsuit. So again, even if it could interrupt prescription, his suit was still untimely. So your honors, that's all I have. I'm happy to entertain questions. If not, I will thank you for your time. As you're walking away, one quick one. I don't think either of you addressed in your briefing the principle, it's a pretty settled rule, that exhaustion of state remedies isn't a prerequisite to bringing a 1983 claim. Right. I agree with that principle. I don't think he can waive his constitutional rights by failing to file before the Civil Service Board. Anything else? Thank you. Thank you. Mr. Sutter. Thank you, your honors. Briefly, Judge Willett, there's not a single case that they have cited to and none that we could find that actually deal with the interplay of civil service and do not have a holding similar to the position that we're advocating here. Why would waiting for the Civil Service Board appeal to be resolved, why would that not essentially be requiring exhaustion of a state court or a state adjudicatory proceeding before bringing a 1983 claim? Because unlike any other administrative proceeding or grievance process where you might seek an investigation through the EEOC or you might seek some kind of remedy after the fact from some sort of internal grievance procedure, civil service has the capacity to completely reverse and alter and change the proposed termination. In every other one of these cases, when notice was given at A, and the courts use this language, it was, quote, inevitable. When notice was given at A, it was inevitable that we were heading to B, termination. Therefore, your notice date, your approval date, should be the day of your notice. I don't necessarily disagree with that. The difference here is when you invoke civil service, which my client did indisputably, you break that chain. The inevitability stops because civil service can completely alter the condition of which they're trying to terminate. If that is the case, every single case that we have found, and the defense decided to none, every single case is acknowledged that because of that, there's no finality. That's the key here. It's not accrued because it's not final. It's not final until civil service finally makes a decision. The appointing authority shall, under the statute, shall adopt what civil service says. When that is done, you now have a final decision. So with that, that's why it's distinguishable here. I want to bring up your point, Judge Inglehart, about waiver. We did address accrual and delay of accrual in general in our memo in opposition. Once the magistrate issued her report and recommendation, we did very specifically talk about the date of February 9 of 2022 being the specific accrual date. And because we timely filed an objection to the magistrate's report and recommendation, there's no dispute that it was timely, under Federal Rule of Civil Procedure 72. You did argue accrual to the magistrate with particular dates? We argued accrual without the February 9 date. We argued the concept of accrual, but we did not argue February 9. As our objection and our argument crystallized, we argued very specific in our objection the February 9 date explicitly and expressly. And my position is in the Walker case, which I cite in my brief, in that case, whenever a timely made objection is made, the district court must engage in a de novo review of that report and recommendation. Let me just quote to you Delaware versus Ricks. Maybe the reason there's no authority on this is because the issue's been settled for 40 years. They say the existence, what they talk about is the EEOC is arguing for tolling of limitations pending a grievance or a reconsideration of a tenure decision. And they say, we have held the pendency of a grievance or some other method of collateral review of an employment decision does not toll the running of the limitations period. Cite, the existence of careful procedures to assure fairness in the tenure decision should not obscure the principle the limitations periods normally commence when the employer's decision is made. And yes, your honor, I'm aware of that language from Ricks and if I can respectfully at 261 of that same opinion, the Supreme Court also states as follows, quote, the grievance procedure by its nature is a remedy for a prior decision. I understand that, but this is their conclusion. Ain't no tolling. Well, they collateral, they talk about collateral, that the existence of careful procedures to assure fairness should not obscure the limitation period normally commence when the employer's decision is made. The difference being this is not a collateral review, your honor, this is a direct review with the authority to overturn it. There is no collateral review and as they cite in this case, and it is to finish the quote. What other cases you would have thought there would be a wealth of precedent and all you cited were a few unpublished district court opinions and one unpublished, I didn't see, I saw maybe one published opinion among the groups that you cited. Regarding the civil service accrual? Yes. Okay, your honor, I would. Along with Harrison and those others. But Harrison is a due process, if it's a due process case, as Mr. Adly said, that's an entirely different situation. Well, respectfully, in this context with civil service, which is one of the giant distinguishing factors with Ricks, in Ricks, the plaintiff was non-tenured, meaning in this case, we have civil service, which the person does have a property interest or a due process right in their continued employment. The difference between asserting a constitutional claim and about First Amendment retaliation and a due process claim is it's well settled that you cannot sue on a due process claim until you have found, until you've undergone the process and you've found it to be inadequate constitutionally. And in this, well, respectfully, your honor, I believe the civil service process when you have a property interest in your employment is that process, that you have to run that process. Well, wouldn't we have a case on that in the last 40 years? I can't explain or express why there wouldn't be a case on it in the last 40 years, but I can say that Ricks is completely inappropriate to this particular case. But if there are any other questions of the panel, if your honor wants me to address Kling anymore. That's okay. Thank you, your honors, for your time.